IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON WILSON CROCKETT,<br><br>               Petitioner,<br><br>vs.<br><br>MAURICE JUNIOUS,[1] Warden (A), North Kern State Prison,<br><br>               Respondent. | No. 2:10-cv-02296-JKS<br><br>MEMORANDUM DECISION |

Leon Wilson Crockett, a state prisoner appearing *pro se*, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Crockett is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the North Kern State Prison. Respondent has answered, and Crockett has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

In October 2008 Crockett was convicted by a Shasta County jury of corporal injury to a former cohabitant, Cal. Penal Code § 273.5(a), kidnapping, Cal. Penal Code § 207(a), and assault with force likely to cause great bodily injury, Cal. Penal Code § 245(a)(1). The trial court found true the special allegations that Crockett had suffered three prior strikes, Cal. Penal Code § 1170.12, and had served four prison terms, Cal. Penal Code § 667.5(b). The Shasta County Superior Court sentenced Crockett to an aggregate, indeterminate prison term of twenty-nine years to life. The California Court of Appeal, Third District, affirmed Crockett's conviction and

---

[1] Maurice Junious, Warden (A), North Kern State Prison, is substituted for R. Barnes, Warden, California Correctional Center. Fed. R. Civ. P. 5(d).

sentence in an unpublished decision,[2] and the California Supreme Court denied review on July 14, 2010.  Crockett timely filed his Petition for relief in this Court on August 18, 2010.

The facts underlying Crockett's conviction, summarized by the California Court of Appeal:

> In July 2008, [Crockett] and K.M. had been in an on-again, off-again dating relationship for four or five months.  Around 7:00 p.m. on July 30, they visited the home of their friends R. and P. and P.'s 14-year-old son D.  Throughout the evening, [Crockett] and K.M. were drinking beer.
>
> About four or five hours after they arrived, [Crockett] was ready to go home and asked K.M. to go with him.  She said "[n]o," and the two started arguing.  [Crockett] then "got a little crazy": he pulled K.M. off the couch by her ankles, and she pleaded with him to let go.  D. tried unsuccessfully to pull [Crockett] off K.M.  R. then called 911.
>
> As R. was talking to the dispatcher, he saw [Crockett] dragging K.M. out the front door by her ankle and wrist, as she yelled for help.  K.M. ended up "on her behind next to [R.'s] van."  [Crockett] was still arguing with her, and D. and P. were "doing what they could to prevent it."
>
> Police arrived three to five minutes after R. called 911.  They ordered [Crockett] to sit on the curb, and eventually he complied.  Officer Harry Bishop talked with K.M., who was shaking and crying.  She smelled like alcohol, but she was not "noticeably" intoxicated, nor was she slurring her speech or unsteady on her feet.  She told Bishop that [Crockett] had dragged her by her shorts and her hair out the front door.  He then dragged her by her hair to the front yard.  Her feet were off the ground and her legs were dragging on the floor.  Officer Bishop saw "on the back of her right leg . . . near her right calf . . . an abrasion . . . about two inches in length" that "was red to pink in color," "[h]ad a little bit of loose skin around the fringes," and "appeared to be a fresh injury."
>
> At trial, K.M. denied fighting with [Crockett] that night and said she did not remember her leg being injured.  [Crockett] was still her "friend."[3]

---

[2] *People v. Crockett*, No. C061217, 2010 WL 1805381 (Cal. Ct. App. May 6, 2010).

[3] *Id.* at *1.

## II.  GROUNDS RAISED/DEFENSES

In his Petition Crockett raises six grounds: (1) insufficiency of the evidence to support his

conviction of causing corporal injury; (2) prosecutorial misconduct; (3) a *Faretta*[4] error is

structural and not susceptible to a harmless error analysis; (4) denial of right to counsel; (5) his

sentence constitutes cruel and unusual punishment; and (6) ineffective assistance of counsel for

failing to raise the cruel and unusual punishment claim.  Respondent does not assert any

affirmative defense.[5]

Initially the Court notes that the body of the Petition simply states the basis for relief in

purely conclusory terms without any factual support or legal argument.  Crockett bears the

burden of proving by a preponderance of the evidence that he is entitled to habeas relief.[6]  The

petition must specify all the grounds for relief available to the petitioner and the facts supporting

each ground.[7]  If it plainly appears on the face of the petition that petitioner is not entitled to

relief, a district court must dismiss the petition.[8]  This requirement survives the initial screening

---

[4] The term "*Faretta* motion" comes from *Faretta v. California*, 422 U.S. 806, 819-820 (1975), which held that the Sixth Amendment grants a criminal defendant the right of self-representation..

[5] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 5(b) (2011).

[6] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (conclusory allegations unsupported by specific facts are insufficient to warrant habeas relief).

[7] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 2(c) (2011).

[8] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 4 (2011).

and if an answer has been ordered and filed, and the court may do so *sua sponte*.[9]  As the

Supreme Court has stated:

> Habeas Corpus Rule 2(c) is more demanding.  It provides that the petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground."  See also Advisory Committee's Note on subd. (c) of Habeas Corpus Rule 2, 28 U.S.C., p. 469 ("In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts. [But] it is the relationship of the facts to the claim asserted that is important . . . ."); Advisory Committee's Note on Habeas Corpus Rule 4, 28 U.S.C., p. 471 ("'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." (internal quotation marks omitted)).  Accordingly, the model form available to aid prisoners in filing their habeas petitions instructs in boldface:
>
> > **"<u>CAUTION</u>: You must include in this petition <u>all</u> the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date."** Petition for Relief From a Conviction or Sentence By a Person in State Custody, Habeas Corpus Rules, Forms App., 28 U.S.C., P. 685 (2000 ed., Supp. V) (emphasis in original).
>
> A prime purpose of Rule 2(c)'s demand that habeas petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to "show cause why the writ should not be granted."  § 2243.  Under Habeas Corpus Rule 4, if "it plainly appears from the petition . . . that the petitioner is not entitled to relief in the district court," the court must summarily dismiss the petition without ordering a responsive pleading.  If the court orders the State to file an answer, that pleading must "address the allegations in the petition." Rule 5(b).[10]

---

[9] *See Day v. McDonough*, 547 U.S. 198, 206-09 (2006) (noting that although the question remains open in the Supreme Court, the Courts of Appeals have unanimously held that, in appropriate circumstances, the court could raise defenses, e.g., procedural default, statute of limitations, exhaustion, and retroactivity, *sua sponte*); *see also Vang v. Nevada*, 329 F.3d 1069, 1073 (9th Cir. 1069) (a district court may raise procedural default *sua sponte*).

[10] *Mayle v. Felix*, 545 U.S. 644, 655-56 (2005).

4

In this case, Crockett attached the Petition for Review filed in the California Supreme Court and repeated it verbatim in his Traverse.  As it previously indicated,[11] the Court reviews the claims as presented in Crockett's Petition for Review attached to his Petition to determine the factual and legal bases for Crockett's grounds.

### III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[12]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[13]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[14]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[15]  When a claim falls

---

[11] Docket No. 27.

[12] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[13] *Williams*, 529 U.S. at 412 (alteration added).

[14] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[15] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted);

(continued...)

under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be "objectively unreasonable," not just "incorrect or erroneous."[16] The Supreme Court has made clear that the objectively unreasonable standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.[17] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[18] In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[19] Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[20]

---

[15](...continued)
*see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[16] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[17] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[18] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[19] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[20] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas
(continued...)

The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[21]

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[22]  State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[23]  This Court gives

---

[20](...continued)
relief on the basis of little more than speculation with slight support").

[21] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[22] *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . . ").

[23] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

the presumed decision of the state court the same AEDPA deference that it would give a

reasoned decision of the state court.[24]

## IV.  DISCUSSION

Ground 1:  Insufficiency of Evidence

Crockett argues that the evidence was insufficient to support his conviction on the count

that the victim suffered a traumatic injury within the meaning of Penal Code § 273.5.

Specifically, he points to the fact that the victim herself did not recall any injuries or how she got

them, and that the officer testified that the only injury he saw on the victim appeared to be fresh.

According to Crockett, this was insufficient to support a reasonable jury's finding of guilt.  The

California Court of Appeal rejected Crockett's arguments, holding:

> ### Sufficiency of the Evidence of Corporal Injury
>
> Defendant contends there was insufficient evidence of corporal injury to a
> cohabitant because the People did not prove *he* caused K.M. to suffer a "traumatic
> condition."  "'[T]raumatic condition'" is "a condition of the body, such as a wound
> or external or internal injury, whether of a minor or serious nature, caused by a
> physical force." (Pen.Code, § 273.5, subd. (c); undesignated statutory references that
> follow are to the Penal Code.)
>
> The gist of defendant's argument is that it was "just as likely that any mark
> on [K.M.'s] right leg, if it even occurred that night, was the result of her own
> stumbling or bumping.  In any event, [Officer] Bishop could testify only that the
> mark on her right calf appeared to be a fresh injury."
>
> This argument ignores the appropriate appellate standard of review of claims
> of sufficiency of the evidence.  Although it is the duty of the jury to acquit a
> defendant if it finds the circumstantial evidence susceptible of two reasonable
> interpretations, one of which suggests guilt and the other innocence, it is the jury, not
> the appellate court, that must be convinced of the defendant's guilt beyond a
> reasonable doubt.  (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1572.)  The
> appellate court must accept reasonable inferences the jury might have drawn from the
> circumstantial evidence, and before a judgment can be set aside, it must clearly

---

[24] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition
was not entitled to § 2254(d) deference).

appear that on no hypothesis was there substantial evidence to support the jury's verdict. (*Id.* at p. 1573.)  That was not the case here.

R. saw defendant drag K.M. out the front door by her ankle and wrist.  Officer Bishop testified that K.M. told him defendant had dragged her by her shorts and her hair out the front door.  Her feet were off the ground and her legs were dragging on the floor.  K.M. had "near her right calf . . . an abrasion . . . about two inches in length" that "was red to pink in color" bordered by loose skin which "appeared to be a fresh injury."  This evidence was sufficient for the jury to conclude beyond a reasonable doubt that, during the evening in question, *defendant* caused K.M. to suffered a two-inch abrasion near her right calf.[25]

As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[26]  This Court must, therefore, determine whether the California court unreasonably applied *Jackson*.  In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.[27]  Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."[28]

Crockett misperceives the role of a federal court sitting in a habeas proceeding challenging a state-court conviction.  This Court is precluded from either re-weighing the

---

[25] *Crockett*, 2010 WL 1805381 at *1-2 (alterations and emphasis in the original).

[26] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010) (reaffirming this standard).

[27] *Jackson*, 443 U.S. at 318-19.

[28] *Id.* at 326; *see McDaniel*, 130 S. Ct. at 673-74.

evidence or assessing the credibility of witnesses.  Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain his conviction.[29]  In this case, the California Court of Appeal determined that there was sufficient evidence of each element of the crimes to support Crockett's conviction.  Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution.[30]  Crockett bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous.[31]  Crockett has failed to carry this burden.  The record does not compel the conclusion that no rational trier of fact could have found proof of guilt, especially considering the double deference owed under *Jackson* and AEDPA.

This Court cannot find that, on the record before it, the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[32]  Crockett is not entitled to relief under his First ground.

---

[29] *See Schlup v. Delo*, 513 U.S. 298, 340 (1995).

[30] *See Jackson*, 443 U.S. at 326.

[31] 28 U.S.C. § 2254(e)(1).

[32] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 402-06; *Andrade,* 538 U.S. at 70-75.

10

Ground 2:  Prosecutorial Misconduct

The prosecutor in this case had represented Crockett in a parole violation case approximately three years earlier.  Crockett argues that this prior representation created a conflict and the prosecutor should have been recused.  Crockett contends this adverse representation violated his due process rights and his conviction should be reversed.  The California Court of Appeal disagreed, holding:

> *Prosecutorial Impropriety*
>
> Defendant contends his constitutional rights were violated because the prosecutor had previously represented him for a parole violation.  There was no error.
>
> On November 14, 2008, defendant submitted a letter to the court alleging that his due process right to a fair trial had been violated because the prosecutor had previously represented him on a parole violation.  Defendant's attorney, Adam Ryan, would not file a motion for new trial, so, on December 8, 2008, the court appointed Robert Hammonds as "separate counsel" to determine whether there were grounds for a motion for a new trial.  (We address this dual appointment further in part IV of the Discussion.)
>
> On February 20, 2009, attorney Hammonds stated there were no grounds for a new trial motion, explaining as follows:
>
> "Mr. Popkes who represented the People at trial had previously represented [defendant] on a parole violation.  I determined that that was a parole violation that occurred in May of 2006.  Mr. Popkes apparently met with [defendant] one time for a few moments.  There was an optional waiver, and I think he received nine months at halftime on that parole violation.
>
> "In reviewing, I've taken documents from the Cal PAP, Parole Advocacy Program.  I met with Mr. Popkes and spoke with him.  I've met with [defendant] on several occasions, and I've read the entire trial transcript and including a *Marsden* hearing held prior to the trial, and based on my professional opinion based on all the information I received and my review of the law, I don't believe that I have a non-frivolous motion for a new trial at this point.  I've informed [defendant] of that fact."
>
> The court then relieved Hammonds as counsel and proceeded to sentencing.
>
> Relying mainly on provisions of the Rules of Professional Conduct, civil cases from our state dealing with attorney conflicts of interest, and a handful of out-of-state cases, defendant contends the judgment must be reversed because the prosecutor "had a conflict and represented an adverse interest to a former client who was also a party."
>
> Despite defendant's failure to point it out, our Penal Code provides guidance regarding when a prosecutor should be recused.  (§ 1424.)  Specifically, a motion to recuse a prosecutor "may not be granted unless the evidence shows that a conflict of

interest exists that would render it unlikely that the defendant would receive a fair trial." (§ 1424, subd. (a)(1).)

There is nothing in this record that shows such a conflict.  Before becoming a prosecutor, Popkes met once with defendant for a few moments while representing him on a parole violation that occurred approximately two years before the crimes charged in this case.  There was no evidence that Popkes learned confidential information in that previous representation that would have impinged on defendant's constitutional right to a fair trial.  (See *People v. Lepe* (1985) 164 Cal.App.3d 685, 688 (*Lepe* ) ["It is improper for a district attorney to prosecute a former client without that client's consent for a crime relating to a matter in reference to which he has obtained confidential information by reason of or in the course of his employment by the former client"] .)

*Lepe* provides a good contrast to the situation here.  There, the district attorney filed an information charging Lepe with assault on two people—Herrera and Rodriguez.  ( *Lepe, supra,* 164 Cal.App.3d at p. 687.)  Previously, the district attorney had defended Lepe in two criminal cases: one was assault on a third party with Herrera and Rodriguez as witnesses; the other was intimidation of Herrera and Rodriguez.  (*Id.* at p. 686.)  Lepe's motion to recuse the entire district attorney's office was granted, and the People appealed, claiming an abuse of discretion.  (*Id.* at p. 687.)  The appellate court affirmed, reasoning the district attorney's prior representation of Lepe included obtaining confidential information from Lepe: "Lepe had to relate to [the district attorney] the circumstances of the first assault witnessed by Herrera and Rodriguez and his later intimidation of those witnesses.  That information necessarily includes the basis for Lepe's hostility toward the now twice-tormented victims with resultant inference of his propensities toward assault and intimidation."  (*Id.* at p. 688.)

There was no indication a similar situation occurred here.  Defendant has not pointed to any plausible scenario under which the prosecutor would have learned confidential information in his extremely brief representation of defendant on his parole violation or was biased against defendant in any way.  Indeed, there is no suggestion the parole violation was in any way related to the current crimes that occurred approximately two years later.  On this record, the mere fact the prosecutor represented defendant in the past was insufficient to demonstrate defendant could not receive a fair trial, and there was no error in allowing the prosecutor to try defendant's case.[33]

---

[33] *Crockett*, 2010 WL 1805381 at *2-4 (alterations in the original).

"To warrant habeas relief, prosecutorial misconduct must 'so infect the trial with unfairness as to make the resulting conviction a denial of due process.'"[34]  In essence, what is required is that reviewing courts consider the equivalent to evaluating whether there was a "reasonable probability" of a different result.[35]  In his Petition to the California Supreme Court, Crockett acknowledges that if the prosecutor did not receive any confidential information from Crockett during the prior representation, there was no conflict warranting reversal.  The gist of Crockett's argument is that because the finding that the prosecutor did not receive confidential information was based upon the investigation by a separately appointed counsel, not findings by the trial judge himself based on evidence presented to the judge, reversal was warranted.

The Supreme Court has never held that a prosecutor who represented a criminal defendant in a prior unrelated proceeding was disqualified where, as here, there is no evidence that the prosecutor received or otherwise utilized information received in confidence, i.e., a violation of the attorney-client privilege.  To the extent that the Federal Courts of Appeals have addressed the subject, they have held that, in absence of the use of confidential information received in the course of the earlier representation, such a prosecution is not a violation of due process.[36]  In the absence of explicit direction from the Supreme Court, this Court cannot say that the decision of the California Court of Appeal in this case was contrary to, or involved an

---

[34] *Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir. 2004) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

[35] *See Hein v. Sullivan*, 601 F.3d 897, 914-15 (9th Cir. 2010).

[36] *See, e.g., Goff v. Bagley*, 601 F.3d 445, 463 n.7 (6th Cir. 2010); *Havens v. Indiana*, 793 F.2d 143, 144-45 (7th Cir. 1986).

unreasonable application of the relevant Supreme Court decisions.[37]  Thus, where holdings of the

Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that

the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[38]  Crockett is not

entitled to relief under his second ground.

Ground 3:  *Faretta* Error

In his third ground Crockett contends that a *Faretta* error is structural and not subject to

harmless error analysis.  While this is a true statement of the law,[39] the Court is puzzled by

Crockett's assertion, which is unsupported by any factual or legal argument other than a citation

to *McKaskle*.  It does not appear at any point in the proceedings before the trial court that

Crockett requested to represent himself or make a *Faretta* motion.  The only reference to *Faretta*

in his Petition to the California Supreme Court is in connection with his claim that he was

improperly denied the right to personally address the sentencing court at the time of sentencing.[40]

An issue he does not appear to raise in his Petition to this Court.

The only claim that is plausibly related to this ground is the claim he made on appeal that

he was improperly denied his right to address the court and present letters purportedly written by

the victim.  The California Court of Appeal rejected that claim, holding:

---

[37] *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *see Kessee v. Mendoza-Powers*, 574 F.3d 675, 678 (2009).

[38] *Musladin*, 549 U.S. at 77 (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008).

[39] *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984) (holding that harmless error review does not apply to *Faretta* waivers); *Franz v. Hazey*, 533 F.3d 724, 734-35 (9th Cir. 2008) (same citing *McKaskle*).

[40] Noting *Boardman v. Estelle*, 957 F.2d 1523, 1528 (9th Cir. 1992), quoted from *Faretta*.

*Sentencing Hearing*

Defendant contends the court violated his right to due process when, at sentencing, the court would not allow him to address the court and present letters purportedly written by K.M.  We do not agree.

After the court relieved defense attorney Hammonds, it proceeded to sentencing with defense attorney Ryan.  The following exchange occurred:

"MR. RYAN:  [F]irst of all, we need to address the Romero motion. However, prior to that [defendant] has handed me some documents and asked me to present them to the court.  Based upon reasons I can disclose only in a closed session, I'm not going to file those with the Court.  [Defendant] is obviously upset about that. I believe it's tantamount to a *Marsden* or at least a closed-session hearing without the prosecutor present.

"THE COURT: Okay. Give me just a moment.  [¶]  All right.  Well—

"MR. RYAN:  I don't need to be anywhere else . . . .

"THE DEFENDANT:  Can I say something, Your Honor?

"THE COURT:  Well, you're represented by counsel, [defendant], and it's not always a good idea to make statements without conferring with your counsel, so here's what I suggest we do. [¶] . . . [¶]

"THE COURT:  Why don't we do this?  Why don't we reconvene at eleven o'clock?  I have sort of an urgent matter to deal with on another matter, and that will give me a chance to re-read the sentencing material that I have, and I can address the concerns you just addressed, Mr. Ryan, when we reconvene.  We'll get back together at eleven o'clock this morning.  [¶]  [Defendant], that would give me a chance to review some material here, and Mr. Ryan has brought up some issue of which you spoke, the fact he wants to present additional papers."

When court reconvened, the court held an in camera session at which Mr. Ryan stated defendant wanted him to submit "[c]ertain handwritten documents to the Court," about which Ryan had a "severe doubt as to their authenticity."  Defendant explained the documents were letters the victim had written him that he had a friend "rewrite" because the jail would not allow him to make copies.  The court ruled it would not review these documents because defendant's attorney believed it was not in defendant's best interest to submit the letters to the court, and the attorney "control[led] the direction of the case."

In open session, the court proceeded to sentencing after defense counsel Ryan stated there was no legal cause why judgment should not be pronounced.  As the court began explaining why defendant was not eligible for probation, defendant interrupted as follows: "You Honor, can I ask you something?"  The court responded, "No.  Make sure—Mr. Ryan is going to talk to you and tell you whether it's appropriate to communicate your comments to me."  After a "[p]ause in [the] proceedings," Mr. Ryan stated they were "ready to proceed," and the court continued with sentencing.

In *People v. Evans* (2008) 44 Cal.4th 590 (*Evans* ), the court held that a defendant has a statutory right to state reasons why judgment should not be pronounced at all, but not the absolute right to state reasons for a more lenient

judgment.  (*Id.* at p. 597, citing §§ 1200 and 1201.)  The limited statutory right a defendant has to be heard in mitigation of punishment requires the defendant to be under oath and subject to cross-examination when making his statement.  (*Evans,* at p. 598, citing § 1204.)  And there is no federal due process right to address the court at sentencing other than under oath and subject to cross-examination.  (*Evans,* at p. 600.)

In *Evans,* after discussing the appropriate sentence, defense counsel stated, "'Submitted.'"  (*Evans, supra,* 44 Cal.4th at p. 593.)  During the pronouncement of judgment, the defendant asked, "'Can I speak, your honor?'  'The trial court replied, "'No.'"  (*Ibid.*)  The Supreme Court noted that "Defense counsel made no attempt to call defendant to testify, and defendant himself did not ask to do so."  (*Id.* at p. 600.) It concluded, "Under these circumstances, there was a forfeiture of defendant's right to testify in mitigation of punishment." (*Ibid.*)

The same is true here. At the time of sentencing, defense counsel Ryan answered "no" when the court asked if there was "[a]ny legal cause why judgment should not now be pronounced."  When the court began sentencing by noting defendant was ineligible for probation, defendant simply asked the court whether he could ask a question.  There was no request either by defense counsel or by defendant to address to the court under oath and subject to cross-examination.  Under these circumstances, there was a forfeiture of defendant's right to testify in mitigation of punishment.

While on the one hand acknowledging we are bound by *Evans* (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455), on the other hand defendant persists that *Evans* is "tangential" because he "sought to introduce documents, and the record does not establish that he sought to make an unsworn, not-subject-to-cross-examination statement like the defendant in *Evans.* " Defendant forgets he bears the burden of proving error by an adequate record.  (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296.)  The record before us is bereft of *evidence* defendant was seeking to address the court in a manner approved of in *Evans.*  It is not up to us to speculate that is what defendant was trying to do.

As to defendant's attempt to introduce letters purportedly written by K.M., the court correctly ruled it was up to counsel to control the litigation and decide whether to submit those to the court.  This was especially true where counsel expressed legitimate concerns about the authenticity of the documents.  (See *People v. Weaver* (2001) 26 Cal.4th 876, 925-926 [courts will not second-guess reasonable, tactical decisions of counsel].)  The court's refusal to file those letters and defense counsel's refusal to submit them to the court did not impinge on defendant's due process right to present a defense.[41]

---

[41] *Crockett,* 2010 WL 1805381 at *4-6 (alterations in the original).

16

Nothing in the record indicates that Crockett sought to do anything but submit copies of letters, the authenticity of which was not established.  Crockett does not point to anything in the record that indicates that he sought to address the Court in person, whether by a sworn or unsworn statement.  There is no authority for the proposition that a criminal defendant represented by counsel may present evidentiary material to the court, whether pretrial, at trial, or at sentencing.

Although Circuit Courts, including the Ninth Circuit,[42] have suggested allocution is a constitutional right, the Supreme Court has not recognized such a right to date.  To the extent that it has spoken on the subject, the Supreme Court has held that a failure to follow the requirements of Federal Rule of Criminal Procedure 32 is not in itself an error that can be raised on a collateral attack.[43]

> The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus.  It is an error which is neither jurisdictional nor constitutional.  It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure.  It does not present exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.[44]

---

[42] *Boardman*, 957 F.2d at 1528.

[43] *Hill v. United States*, 368 U.S. 424, 426-28 (1962).

[44] *Id.* at 428 (citations and internal quotation marks omitted).
Fed. R. Crim. P. 32(i)(4) "Opportunity to Speak" provides in relevant part:

(A) *By a Party*.  Before imposing sentence, the court must:
    (i) provide the defendant's attorney an opportunity to speak on the defendant's behalf;
    (ii) address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence; and

(continued...)

Crockett acknowledges that the Supreme Court has not recognized the right to allocution to be one of constitutional dimension. Circuit precedent may not serve to create established federal law on an issue the Supreme Court has not yet addressed or otherwise left unaddressed and open.[45] Because no "specific legal rule" on this issue has been "squarely established by th[e] Court,"[46] his argument must fail. Irrespective of the form in which the issue is posed, because there is no error of a constitutional dimension, Crockett is not entitled to relief under his third ground.

Ground 4:  Denial of Right to Counsel

In his fourth ground, Crockett contends that he was denied his right to counsel. Crockett complained to the trial court about the professional conduct of the attorney who had been appointed to investigate the alleged prosecutorial conflict.[47] Specifically, after that attorney had been discharged, Crockett complained that the attorney had smelled of alcohol when counsel had talked to Crockett and appeared in court. Crockett argued that the trial court should have held a hearing on his *Marsden* motion.[48] The California Court of Appeal held otherwise:

---

[44](...continued)
      (iii) provide an attorney for the government an opportunity to speak equivalent to that of the defendant's attorney.

Prior to the 2008 amendments, these provisions were part of Rule 32(a)(1).

[45] *Musladin,* 549 U.S. at 76-77; *Holley v. Yarborough*, 568 F.3d 1091, 1097 (9th Cir. 2009).

[46] *Richter*, 131 S. Ct. at 786 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)).

[47] *See* discussion *supra* on Ground two, pp. 11-14.

[48] The term "*Marsden* motion" comes from *People v. Marsden,* 465 P.2d 44, 47-48 (Cal. 1970), a California Supreme Court case that held that, as part of a criminal defendant's right to effective assistance of counsel under the Sixth Amendment, a trial judge must permit a defendant
(continued...)

### The Need for a Marsden Hearing

Defendant contends the court abused its discretion and violated his Sixth Amendment right to counsel when it failed to hold a *Marsden* hearing after defendant complained defense counsel Hammonds was under the influence of alcohol.

Specifically, at sentencing, defendant complained that attorney Hammonds (who had represented defendant only to investigate into grounds for a new trial motion) "came in here with the influence of alcohol on him, and that ain't cool. When he was here the last time, I told him the same thing.  Why are you coming to see me and smell like alcohol?"  In response, defense counsel Ryan argued that defendant's complaints "should not be discussed here" because "Mr. Hammonds [was] no longer on the case so he can't be discharged" and "he's not here."  The court did not address the matter further.

First of all, we note that, at the time of this colloquy, Hammonds was no longer counsel for defendant.  Thus, it would make no sense for the court to conduct a hearing to replace an attorney who was no longer counsel for the defendant.  And, as we explain, the court did not err in failing to hold a *Marsden* hearing to replace Hammonds even though he was no longer representing defendant because defendant did not have a right to two attorneys—Ryan and a replacement for Hammonds—to represent him at the same time.

As our Supreme Court has explained, "We are unaware of any authority supporting the appointment of simultaneous and independent, but potentially rival, attorneys to represent defendant ." (*People v. Smith* (1993) 6 Cal.4th 684, 695.)  This is exactly what happened here.  As the trial court told defendant when appointing Hammonds, "you'll have two attorneys for a while . . . .  I'm not relieving Mr. Ryan, but I am appointing you separate counsel to review the new trial motion."  Under *Smith,* the court erred in appointing Hammonds in the first place, at least so long as Ryan remained counsel for defendant.  (*Id.* at pp. 695-696.)

What the court should have done was conduct a *Marsden* hearing regarding Ryan to determine whether there were adequate grounds to appoint new counsel and, if so, relieve Ryan for all purposes.  (*People v. Smith, supra,* 6 Cal.4th at pp. 695-696.)  New counsel could then investigate a possible motion for new trial based on alleged ineffective assistance of counsel.  (*Ibid.*)  In any event, defendant did not have the right to replace Hammonds with another lawyer while Ryan was his attorney.  And, while the record suggests defendant may at one point have been irritated with Ryan because he would not file a new trial motion based on the prosecutor's prior representation of defendant, he made no objection to Ryan's continued representation after Hammonds reported to the court and was relieved as counsel.  Indeed, the

---

[48](...continued)

requesting substitute counsel the opportunity to present his reasons for the request, *i.e.* evidence and argument to establish that he is receiving ineffective assistance of counsel.

record does not reflect that defendant at any time requested that the court replace Ryan as his attorney.[49]

Crockett contends that:

> The Court of Appeal relied on petitioner's inartful word choice to conclude Hammonds was no longer counsel and could not be discharged (and petitioner was not entitled to two counsel).  However, the *Marsden* inquiry that was required was retrospective in nature - - to determine whether Hammond ought to have been relieved when he represented petitioner, which would have entitled petitioner to the appointment of a successor counsel for the motion.
>
> The trial court had a duty to inquire into petitioner's report that his counsel for the motion had been under the influence at the time counsel represented petitioner.  Not having done so created a situation where the only attorney representing petitioner's interest vis-a-vis his claim of a conflict of interest was, or might have been, incapacitated and under the influence of alcohol while doing so. Accordingly, reversal was required.[50]

The California Supreme Court summarily rejected Crockett's argument.  When there is no reasoned state-court decision denying an issue presented to the state, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[51]   "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely."[52]   Where the presumption applies, this Court must perform an independent review of the record to ascertain whether the state-court decision was "objectively unreasonable."[53]   In conducting an independent review of the record, this Court presumes that the relevant state-court decision rested on federal

---

[49] *Crockett*, 2010 WL 1805381 at *6.

[50] Docket No. 1 at 40.

[51] *Id.* (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).

[52] *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

[53] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (quoting *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam)).

grounds,[54] giving that presumed decision the same deference as a reasoned decision.[55]  The scope

of this review is for clear error of the state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state
> court's decision, we can view it through the "objectively reasonable" lens ground by
> *Williams*. . . . Federal habeas review is not *de novo* when the state court does not
> supply reasoning for its decision, but an independent review of the record is required
> to determine whether the state court clearly erred in its application of controlling
> federal law.  Only by that examination may we determine whether the state court's
> decision was objectively reasonable.[56]

"[A]lthough we independently review the record, we still defer to the state court's ultimate

decision."[57]

In this case there is no reason not to presume that the Claifnria Supreme Court ruled on

the merits.  It is unquestionably a violation of the Sixth Amendment to deny a criminal defendant

the assistance of counsel.[58]  The issue presented in this case, however, is not whether Crockett

was denied counsel, but whether the allegations are sufficient to show Crockett was denied the

---

[54] *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991) ("The presumption at present applies only when it fairly appears that a state court judgment rested primarily on federal law or was interwoven with federal law, that is, in those cases where a federal court has good reason to question whether there is an independent and adequate state ground for the decision."); *see also Harris*, 489 U.S. at 263.

[55] *Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[56] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (citation omitted). *But cf. Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004) ("Our standard of review is not controlled by *Delgado v. Lewis* . . . . There, we held that where a state court provides no rational for a decision, a habeas court does not apply de novo review, but instead determines whether the state decision was objectively unreasonable based on its independent reading of the record.  Here, however, the state court was not silent as to its reasoning . . . .  Therefore, we review de novo whether Lewis waived his right to conflict free counsel . . . .").

[57] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

[58] *Gideon v. Wainwright*, 372 U.S. 335, 343 (1963).

effective assistance of counsel.  The constitutional question this Court must answer is not whether the state trial court "abused its discretion" in declining to hold a *Marsden* evidentiary hearing, but whether the facts alleged by Crockett were sufficient to entitle him to an evidentiary hearing on his claims.[59]  As the Ninth Circuit observed in *Schell*, "a defendant is entitled to an evidentiary hearing if he has alleged facts that, if proved, would entitle him to relief."[60]  Here, the only fact that Crockett has alleged is that the attorney smelled of alcohol.  There is no allegation that the attorney was under the influence or intoxicated to the point that he was either incoherent or even slurred his words.  There is no allegation that the attorney did not properly investigate the circumstances of the alleged conflict of Crockett's trial attorney or that his report was in any way flawed.  In short, there is no factual allegation that, if proven to be true, would warrant a finding that Crockett was denied the effective assistance of counsel.  Accordingly, there was no reason to hold a *Marsden* hearing.[61]  Crockett is not entitled to relief under his fourth ground.

Ground 5:  Cruel and Unusual Punishment; Ground 6:  Ineffective Assistance of Counsel

Crockett contends that his sentence of twenty-nine years to life exceeded the maximum sentence that the legislature intended and was, therefore, cruel and unusual in violation of the Eighth Amendment.  Crockett further contends that his trial counsel was ineffective for failing to object to the imposition of sentence.  The California Court of Appeal rejected both arguments:

---

[59] *See Schell v. Witek*, 218 F.3d 1017, 1026-28 (9th Cir. 2000) (en banc).

[60] *Id.* at 1028.

[61] This Court categorically rejects Respondent's argument that whether or not a *Marsden* hearing is required is strictly a question of state law not cognizable in a federal habeas proceeding.  Both state and federal courts routinely and regularly conduct hearings on motions to substitute appointed counsel because it does implicate a fundamental constitutional right.

*Cruel and Unusual Punishment*

For the first time, defendant contends his sentence of 29 years to life was cruel and unusual punishment under the Eighth Amendment to the United States Constitution.  By failing to raise the issue in the trial court, he has forfeited it. (*People v. Kelley* (1997) 52 Cal.App.4th 568, 583; *People v. Vance* (2006) 141 Cal.App.4th 1104, 1113, fn. 4.)  In a supplemental brief, he contends trial counsel was ineffective for failing to make the argument.  As we explain, the argument lacks merit, so counsel was not ineffective for failing to make it.  (See *People v. Osband* (1996) 13 Cal.4th 622, 678, 700-702.)

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment, but strict proportionality between crime and punishment is not required.  "'Rather, [the Eighth Amendment] forbids only extreme sentences that are "grossly disproportionate" to the crime.'"  (*People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1135.)

The United States Supreme Court has upheld life sentences for recidivists even for current nonviolent felonies.  (See *Ewing v. California* (2003) 538 U.S. 11 [155 L.Ed.2d 108] [25 years to life under the three strikes law for theft of three golf clubs worth $399 each]; *Lockyer v. Andrade* (2003) 538 U.S. 63 [155 L.Ed.2d 144] [two consecutive terms of 25 years to life for two separate thefts of less than $150 worth of videotapes].)

Here, defendant's current offenses-corporal injury to a cohabitant, false imprisonment, and assault likely to cause great bodily injury—were much more egregious than those of *Ewing* or *Andrade.*  Moreover, his punishment was not just for those crimes, but was also for his recidivism, which consisted of three prior strikes (assault with a firearm, shooting at an inhabited dwelling/vehicle, and robbery) and four prior prison terms.  On this record and against the backdrop of the Supreme Court precedent we have just recounted, trial counsel was not deficient for failing to raise a cruel-and-unusual-punishment argument.[62]

Initially, the Court notes that Crockett does not present any explanation or basis for his conclusory statement that the sentence was greater than the legislature intended.  Nor does it appear from the copy of his Petition for Review in the California Supreme Court attached to his Petition in this Court that he raised any issue other than to attack the constitutionality of California's three-strikes law.  Thus, because whether the sentence was outside the California

---

[62] *Crockett*, 2010 WL 1805381 at *6-7.

23

legislative intent is both a question of state law not within the purview of this Court in a federal

habeas petition,[63] and is not properly raised in any event, the Court will not address that question.

Although Crockett may have received a severe sentence and the Eighth Amendment

prohibits sentences that are grossly disproportionate to the crime, "outside the context of capital

punishment, successful challenges to the proportionality of particular sentences will be

exceedingly rare."[64]   Balanced against the proportionality principle is the corollary principle that

the determination of prison sentences is a legislative prerogative not within the province of the

courts.[65]   The Ninth Circuit has held that "'only extreme sentences that are grossly

disproportionate to the crime' violate the Eighth Amendment."[66]   In light of the Supreme Court

decision in *Ewing*,[67] cited by the California Court of Appeal, this Court cannot say that the

decision of the California Court of Appeal was "contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States" or "was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."[68]   Crockett is not entitled to relief under his fifth

ground.

---

[63] *Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (holding that it is of no federal concern whether state law was correctly applied).

[64] *Solem v. Helm,* 463 U.S. 277, 289-90 (1983) (internal alterations and emphasis omitted).

[65] *Rummel v. Estelle*, 445 U.S. 263, 275-76 (1980).

[66] *Cacoperdo v. Demosthenes,* 37 F.3d 504, 507 (9th Cir.1994) (quoting *United States v. Bland,* 961 F.2d 123, 129 (9th Cir.1992)).

[67] *Ewing v. California*, 538 U.S. 11, 28-30 (2003) (affirming a sentence of 25 years to life imposed for felony grand theft of three golf clubs under three strikes law).

[68] 28 U.S.C. § 2254(d).

Under *Strickland*, to demonstrate ineffective assistance of counsel, Crockett must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[69]   An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either one of the *Strickland* prongs.[70]   As noted above, Crockett's Eighth Amendment claim is meritless.   Consequently, the failure of his trial counsel to raise it does not render his assistance ineffective.[71]   In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro, supra,* at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[72]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[73]

---

[69] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[70] *See id.* at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

[71] *Id.* at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

[72] *Mirzayance*, 556 U.S. at 121.

[73] *Id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

It certainly was not unreasonable for the California Court of Appeal to conclude that trial counsel was not deficient for failing to raise the cruel and unusual punishment claim.[74]  Crockett is not entitled to relief under either his sixth ground.

## V.  CONCLUSION AND ORDER

Crockett is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[75]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[76]

The Clerk of the Court is to enter judgment accordingly.

Dated:  March 30, 2012.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

---

[74] *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1410 (2011).

[75] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).

[76] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.